IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

WILFREDO RODRIGUEZ,

    Plaintiff,

v.                                                                                     Civil Action No. 5:12cv24
                                                                                      (Judge Bailey)

MATTHEW W. MELLADY, Deputy
Regional Counsel – Mid-Atlantic Regional
Office; C. EICHENLAUB, Regional Director,
Mid-Atlantic Region; TERRY O'BRIEN,
Warden, U.S.P. Hazelton; and DAVID
SWEENEY, Unit Manager, U.S.P. Hazelton,

    Defendants.

## I. Procedural History

The *pro se* plaintiff initiated this <u>Bivens</u>[1] civil rights action on February 21, 2012, alleging various constitutional violations against the defendants regarding the handling of certain administrative remedies he filed. On March 13, 2012, the plaintiff was granted permission to proceed *in forma pauperis.* On March 21, 2012, the plaintiff filed a motion for appointed counsel, which was denied by Order entered on March 26, 2012. Petitioner also filed a "petition for a writ of habeas corpus" the same day, which was construed as a second motion for appointed counsel; for release from the Special Housing Unit; for greater law library access; to grant him a hearing on his motion seeking greater law library access; and seeking an order directing the Bureau of Prisons ("BOP") to refrain from transferring him to another institution before his case was decided. By Order entered March 26, 2012, the motions were denied.

The plaintiff paid his partial filing fee on March 30, 2012. On April 2, 2012, the undersigned conducted a preliminary review of the complaint and determined that summary

---

[1] <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971).

1

dismissal was not warranted at that time and directed the defendants to answer the complaint. After being granted a series of motions requesting extensions of time, on September 19, 2012, the defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment with a memorandum in support. On September 24, 2012, a Roseboro[2] Notice was issued to the plaintiff, advising him of his right to file a response to the defendant's dispositive motion within 21 days, or by October 15, 2012. As of the date of this Report and Recommendation ("R&R"), the plaintiff has not filed a response.

Accordingly, this case is before the undersigned for a report and recommendation on the defendants' Motion to Dismiss or Motion for Summary Judgment.

## II. Facts

On April 24, 2011, incident to a random search, USP Hazelton prison staff found a cell phone, concealed inside a radio in plaintiff's locker. (Sweeney Decl. ¶4, Dkt.# 57-8 at 2; BOP Incident Report, Dkt.# 57-10 at 1). As a result, plaintiff was charged with the "Possession, Manufacture, or Introduction of a Hazardous Tool (including cellular telephones, MP3 players), a Code 108 offense, under the "greatest" severity level of BOP Prohibited Acts. (Sweeney Decl. ¶4, Dkt.# 57-8 at 3-4, and Federal BOP, USP Hazelton Inmate Information Handbook at 45).

After FBI review, the Incident Report was released to the prison's disciplinary program on October 13, 2011 for administrative processing. (Sweeney Decl. ¶5, Dkt.# 57-8 at 2). After the administrative investigation was complete on October 14, 2011, the Unit Discipline Committee ("UDC") referred it to the Discipline Hearing Officer ("DHO") for further proceedings. (Sweeney Decl. ¶10, Dkt.# 57-8 at 3-4; and BOP Incident Report, Dkt.# 57-10 at 1).

---

[2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

Plaintiff received the Notice of Discipline Hearing Before the DHO on October 14, 2011. (Sweeny Decl. ¶5, Dkt.# 57-8 at 2; and Notice of Discipline Hearing Before the DHO, Dkt.# 57-11). The Notice explains that although the charged incident took place on April 24, 2011, the charges were not released from FBI review for processing through the institution's discipline program until October 13, 2011.[3] Id. Plaintiff signed and dated the form, acknowledging receipt of the Notice, and requested to have Lt. Serrano present as his staff representative.[4] (Sweeney Decl. ¶7 and Notice of Discipline Hearing Before the (DHO), Dkt.# 57-11).

Also on October 14, 2011, plaintiff acknowledged that he had been advised of and understood his rights regarding the upcoming discipline hearing before the DHO, by signing and dating an Inmate Rights at Discipline Hearing form. (Sweeney Decl. ¶6, Dkt.# 57-8 at 2; and Inmate Rights at Discipline Hearing, Dkt.# 57-12).

On October 20, 2011, the disciplinary hearing was conducted before the DHO. (Sweeney Decl. ¶8, Dkt.# 57-8 at 3). The DHO's October 31, 2011 report indicates that upon review of the evidence presented, plaintiff was found to have committed the prohibited act and to be guilty of the Rule violation. (Sweeney Decl. ¶8, Dkt.# 57-8 at 3; and BOP Discipline Hearing Officer Report, Dkt.# 57-14 at 2-3). Accordingly, plaintiff was sanctioned with the loss of 41 days of Good Conduct Time; received 60 days disciplinary segregation; and lost six months of commissary and phone privileges.[5] (Sweeney Decl. ¶8, Dkt.# 57-8 at 3; and BOP Discipline

---

[3] Investigation by prison personnel of an incident that may be the subject of a criminal prosecution is suspended until the FBI indicates it may proceed. Title 28 C.F.R. §541.14(b)(1).

[4] As a member of Special Investigative Services ("SIS"), Lt. Serrano was not permitted to be plaintiff's staff representative. (Sweeney Decl. ¶7, and BOP Duties of Staff Representative, Dkt.# 57-13). At the DHO hearing, the plaintiff waived having a staff representative. (Sweeney Decl. ¶7 and Notice of Discipline Hearing Before the (DHO), Dkt.# 57-11).

[5] The Plaintiff was present at the hearing, but did not present any witnesses on his behalf, nor did he present any documentary evidence.

Hearing Officer Report, Dkt.# 57-14 at 3). The DHO's report also noted that the plaintiff's hearing had been delayed because the charge was first referred to the FBI for possible criminal prosecution, and was not released for administrative processing until October 13, 2011. Id.

On December 20, 2011, the DHO conducted the plaintiff's hearing regarding his assignment to a Special Management Unit ("SMU"). (Lohr Decl. ¶7, Dkt.# 57-15 at 2; and Hearing Administrator's Report on Referral for Designation to a Special Management Unit, Dkt.# 57-16). The DHO's Report concluded that, based on plaintiff's history of gang affiliation and serious and disruptive misconduct, he met the criteria for designation to a Special Management Unit ("SMU").[6]

### III. The Pleadings

**A. Plaintiff's Complaint**

In his complaint, the plaintiff, an inmate formerly incarcerated in the Special Housing Unit at U.S.P. Hazelton[7] for a disciplinary violation, raises these allegations:

1) Defendant Matthew Mellady failed to respond to his grievances numerous times, repeatedly skirting the issue or rejecting it;

2) Defendant C. Eichenlaub has skirted the issue of answering his grievances with frivolous rejections;

3) Defendant Warden Terry O'Brien is aware of staff misconduct regarding BOP policy, but fails to correct the matter. Disciplinary hearings are merely "bogus kangaroo courts" that provide no protection to inmates' due process rights, exhibit disregard for proper procedure, including the use of falsified documents;

4) Defendant David Sweeney, a member of plaintiff's Unit Disciplinary Committee, violated plaintiff's due process rights by failing to stop staff misconduct; by attending his

---

[6] The DHO found that plaintiff had a record of incident reports for possession of a hazardous tool (cellular telephone); inmate assault; possession of dangerous weapons; serious assault on an inmate using a homemade weapon; setting a fire, destruction of government property, and drug use. (Lohr Decl. ¶7, Dkt.# 57-15 at 2; and Hearing Administrator's Report on Referral for Designation to a Special Management Unit, Dkt.# 57-16 at 3).

[7] Plaintiff is presently incarcerated at Talladega FCI in Talladega, Alabama, having been transferred there on or about June 18, 2012. (Dkt.# 33).

disciplinary hearing as a witness against him; and by strongly recommending that plaintiff be placed in the Special Management Unit; and

5) the staff at U.S.P. Hazelton routinely falsify federal documents and falsify staff signatures without the signers' consent.

As relief, plaintiff seeks injunctive relief in the form of a court order directing U.S.P. Hazelton to follow mandated BOP policy, ending its "kangaroo courts." Further, he seeks monetary compensation in the form of punitive damages.

**B. Defendants' Motion to Dismiss, or in the Alternative, For Summary Judgment**

In its motion to dismiss, or in the alternative, for summary judgment, the defendants assert that the case should be dismissed because

1) plaintiff's claims against Defendants Eichenlaub and Mellady fail because the court has no personal jurisdiction over them;

2) plaintiff has failed to exhaust his administrative remedies;

3) plaintiff's constitutional claims fail to state a claim upon which relief can be granted, because he has failed to sufficiently allege any violation of a clearly established constitutional right; and

4) even if plaintiff had sufficiently alleged a constitutional claim, the defendants are entitled to qualified immunity.

### IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the

plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id.) (citations omitted), to one that is "plausible on its face," (Id.) at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a

sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id).

B. **Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." (Id) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## V. Analysis

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[1] and is required even when the relief sought is not available. Booth *supra* at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, 534 U.S. at 524 (citing Booth, 532 U.S. at 741) (emphasis added). Moreover, an inmate may procedurally default his claims by failing to follow the proper procedures. See Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378 (2006) (recognizing the PLRA provisions contain a procedural default component).

The Bureau of Prisons makes available to its inmates a three-level administrative remedy process if informal resolution procedures fail to achieve sufficient results. See 28 C.F.R. § 542.10, *et seq*. This process is begun by filing a Request for Administrative Remedy at the institution where the inmate is incarcerated. If the inmate's complaint is denied at the institutional level, he may appeal that decision to the Regional Office for the geographic region in which the inmate's institution of confinement is located.[8] If the Regional Office denies relief,

---

[1] Id.

[8] For inmates confined at FCI-Gilmer, those appeals are sent to the Mid-Atlantic Regional Director in Annapolis Junction, Maryland.

the inmate can appeal to the Office of General Counsel via a Central Office Administrative Remedy Appeal. An inmate must fully complete each level of the process in order to properly exhaust his administrative remedies. See 28 C.F.R. § 542.15(a).

Here, plaintiff's failure to respond to the defendants' motion to dismiss or for summary judgment sheds no light on his position regarding the defendants' claim that he has not fully exhausted his administrative remedies. In his tersely-worded complaint, filed without a memorandum in support, plaintiff merely provides ID numbers for several grievances he claims to have filed, and in a later-filed "Exhibits to Complaint" (Dkt.# 8), he attaches copies of 3 responses he received to various filed grievances. It is unclear from his complaint whether he maintains he has fully exhausted.

By contrast, the defendants have produced a complete copy of plaintiff's January 18, 2006 – July 17, 2012 administrative remedy history[9] from SENTRY,[10] as well as a declaration from Marvella Heard, Legal Assistant at the BOP Mid-Atlantic Regional Office. Ms. Heard attests that during this relevant time period, the plaintiff filed three distinct series of remedy requests regarding the issues raised in his complaint - i.e. his "administrative confinement," the delay in his UDC/DHO hearings, and/or various alleged improprieties concerning his disciplinary proceedings, set forth in Administrative Remedy ID #641030, Administrative Remedy ID #64255, and Administrative Remedy ID #649473.

**Administrative Remedy ID #641030**

---

[9] May 26, 2011 is the date on which the plaintiff filed the first administrative grievance over the acts alleged in the instant case.

[10] The SENTRY System is the Federal Bureau of Prisons' mainframe-based computer resource to track the system-wide movement of inmates; provide sentence computations; track work assignments, program assignments, institution designation, administrative remedies, discipline, sensitive medical records data, financial responsibility data, and inmates' participation in educational programs.

9

On May 26, 2011, plaintiff filed Administrative Remedy ID #641030-F1[11] at the institution level, alleging inconsistencies in his administrative detention order and his resulting confinement in the SHU. (Heard Decl., ¶10, Dkt.# 63-1 at 4; and Dkt.# 57-6 at 1). On June 8, 2011, the Warden responded with an explanation that a proper Detention Order for his placement in SHU had been filed on April 24, 2011, based on the prohibited act he had committed on that date. (O'Brien Decl. ¶5, Dkt.# 57-17; and Dkt.# 57-18). Plaintiff appealed that response to the Regional Office level on June 20, 2011, via Remedy ID #641030-R1. (Heard Dec., ¶10, Dkt.# 63-1 at 4; and Dkt.# 57-6 at 2). Although plaintiff's complaint alleges that defendant Mellady failed to respond to Remedy ID #641030-R1, a review of the record reveals that this remedy submission was, in fact, accepted for processing at the Regional level.[12] (Mellady Decl. ¶5, Dkt.# 57-19; and Dkt.# 57-21). On August 31, 2011, the remedy submission was denied on the merits by the Regional Director of the Mid-Atlantic Region. (Heard Decl. ¶10, Dkt.# 63-1; and Dkt.# 57-6 at 2; Mellady Decl. ¶6, Dkt.# 57-19 at 3; and Dkt.# 57-21). Contrary to plaintiff's allegations that this response from the Regional level failed to address the merits of his claim, was frivolous, and demonstrated "bias" and "unprofessional behavior," the response clearly sets forth a policy-based response to the plaintiff's appeal. It addresses plaintiff's complaint regarding the propriety of his detention order, cites to Program Statement 5270.08, which authorizes a Warden to administratively detain an inmate who "pose[s] a serious threat to the

---

[11] Within the BOP record-keeping system, each administrative remedy request is assigned a six-digit numerical ID, or case number, as well as an alpha-numeric suffix. The alpha-numeric suffix identifies the specific level in the administrative review process. Thus, the suffix "F" identifies a remedy request at the institutional (the facility) level, while the letter "R" represents the Regional Office level, and the letter "A" indicates the General Counsel, or the Central Office level. (Heard Decl., ¶7, Dkt.# 63-1 at 3). For each specific remedy request, the numerical ID, or case number, remains the same, while the alpha-numeric suffix may change, depending upon the progression of the request through the various levels of administrative review. Furthermore, at each level, the letter is followed by a number, such as "F1," which indicates the inmate has filed once at the institutional level. If the inmate is rejected at that level and re-files the appeal at that level, the suffix would be "F2." (Id.)

[12] Plaintiff also alleges that Mellady failed to respond to Remedy ID # 641030-R2, but there is no record of Remedy ID No. 641030-R2 in the SENTRY database. (Exhibit 5, Mellady Decl. and Attachment A). Indeed, there could be no second submission, because the first one was, in fact, accepted for processing.

10

security or orderly running of the institution" and/or when there is a "pending investigation of a violation of bureau regulations." (Mellady Decl. ¶6, Dkt.# 57-19 at 3; and Dkt.# 57-21; Eichenlaub Decl. ¶ ¶6, 7, Dkt# 3-4; and Dkt.# 57-26). Further, plaintiff was advised that he could appeal the denial to the Central Office within thirty days. (Id.) On September 26, 2011, the plaintiff appealed the Regional Office denial by filing Administrative Remedy ID # 641030-A1 at the Central Office level. (Heard Decl, ¶10, Dkt.# 63-1 at 4; and Dkt.# 57-6 at 3). This submission was rejected on October 12, 2011 for exceeding the allotted number of continuation pages. Despite that, plaintiff was given the opportunity to resubmit it, in proper form, if he did so within fifteen days of the date of the rejection notice, or by October 27, 2011. (Id.). On November 21, 2011, the plaintiff attempted to re-submit Remedy ID # 641030-A2 to the Central Office. (Heard Decl. ¶10, Dkt.# 63-1; and Dkt.# 57-6 at 4). On November 28, 2011, the Central Office rejected plaintiff's submission, advising him that all pages of the BP-11 "must be legible." (Dkt.# 57-29). Plaintiff was given another fifteen days from the date of the notice to properly resubmit his appeal.[13] (Id.). However, there is no record that he ever re-filed this remedy at the Central Office level, or ever submitted any further appeals at all regarding this remedy. (Heard Decl. ¶10, Dkt.# 63-1at 4).

**Remedy ID #642555**

On June 8, 2011, plaintiff filed Remedy ID #642555-F1 at the institution level, complaining that he had not been notified about the FBI investigation regarding the April 24th Incident Report and that his hearing had not been held in a timely manner. (BOP Incident Report, Dkt.# 57-10; Heard Decl. ¶11, Dkt.# 63-1; and Dkt.# 57-7 at 1). It was denied by the Warden on August 19, 2011, explaining that pursuant to P.S. 5270.07, his Incident Report had been

---

[13] Notably, these Central Office rejections were not *denials* of the remedy requests. To the contrary, the Central Office never had the opportunity to *act* upon the plaintiff's submissions, because plaintiff failed to comply with the mandatory procedural requirements for submitting them. (Heard Decl. ¶10, Dkt.# ; and Dkt.# 57-6 at 3-4).

suspended pending an FBI referral.[14] Plaintiff appealed it to the Regional Office on November 17, 2011, via Remedy ID #64255-R1. (Heard Decl. ¶11, Dkt.# 63-1; and Dkt.# 57-7 at 2). It was rejected on November 30, 2011 as untimely, and he was instructed to re-submit it within 10 days of the date of the rejection notice. On December 12, 2011 this submission was rejected at the Regional Level for being untimely; plaintiff was advised that he could resubmit the appeal within ten days of the date of the rejection notice, or by December 22, 2011. (Notice of Discipline Hearing Before DHO, Dkt.# 57-12; Heard Decl. ¶11, Dkt.# 63-1 at 4-5; and Dkt.# 57-7 at 2; Dkt.# 57-6; C. Eichenlaub Decl. ¶5, Dkt.# 57-23; and Dkt.# 57-24.[15] On December 21, 2011, he re-submitted Remedy ID # 642555-R3 at the Regional Office. (Heard Decl. ¶11, Dkt.# 63-1 at 5; and Dkt.# 57-7 at 3).[16] On January 6, 2012, it was rejected as untimely and for attempting to appeal more than one incident report on the single appeal form. (Heard Decl. ¶11, Dkt.# 63-1 at 5; and Dkt.# 57-7 at 4). He was advised that he must file a separate appeal for each incident he wished to appeal, and that he could resubmit his appeal in proper form within ten days from the date of the rejection notice, or by January 16, 2012. Id. However, he never re-filed the remedy request at the Regional level, nor did he file any further administrative remedy submissions regarding this claim. Id.

---

[14] Program Statement 5270.07 provides: "When it appears likely that the incident may be the subject of criminal prosecution, the investigating officer shall suspend the investigation and staff may not question the inmate until the Federal Bureau of Investigation or other investigative agency interviews have been completed or until the agency responsible for the criminal investigation advises that staff questioning may occur."

[15] There is an apparent discrepancy regarding the date of this Regional rejection notice, in that the Notice is dated December 12, 2011, while SENTRY records seem to reflect a date of Nov. 30, 2011. (Inmate Rights at Discipline Hearing, Dkt.# 57-12; Heard Decl. ¶11, Dkt.# 63-1 at 5; and Dkt.# 57-7 at 2). If, in fact, the date on the Rejection Notice of December 12th is controlling, it could arguably have affected the "untimeliness" of plaintiff's attempted resubmission at the Regional level. However, this point is moot, because, as noted *supra*, plaintiff failed to pursue this remedy to the Central Office level.

[16] Remedy ID No. 642555-R2 was "VOD" or voided from the Administrative Remedy Generalized Retrieval system for technical reasons on January 6, 2012. The superseding entry, Remedy ID No. 642555-R3 containing the same substance as in Remedy ID No. 642555-R2, was generated in the system on December 21, 2011. (Heard Decl., ¶11, FN 1, Dkt.# 63-1 at 5)

**Remedy ID #649473**

On July 27, 2011, plaintiff filed Remedy ID #649473-F1 at the institutional level, requesting to be released from the Special Housing Unit ("SHU") and complaining that the staff was not addressing his needs. (Heard Decl. ¶9, Dkt.# 63-1 at 4; and Dkt.# 57-5 at 1). He received an explanation response from the Warden's representative on August 19, 2011, advising that his allegations of staff misconduct had been referred to the appropriate department, and that because of the sensitive nature of the allegations, some of the findings might not be disclosable. (Dkt.# 57-33). Plaintiff was advised that if he was dissatisfied with the Warden's response, he could appeal to the Regional Level, but that any such appeal must be filed by August 8, 2011. Id. On September 9, 2011, plaintiff attempted to appeal by submitting Remedy ID # 649473-R1 at the Regional Office Level. (Heard Decl. ¶9, Dkt.# 63-1 at 3; and Dkt.# 57-5 at 2). Not surprisingly, on October 6, 2011, it was rejected as untimely and also for exceeding the allotted number of continuation pages. He was instructed to resubmit it in proper form within 10 days from the date of the notice. He submitted Remedy ID #649473-R2 at the Regional Office level on November 21, 2011; it was also rejected as untimely and exceeding the allotted number of continuation pages on December 16, 2011.[17] (Heard Decl. ¶9, Dkt.# 63-1 at 3-4). Despite being advised that a re-submission was due by October 16, 2011, on November 21, 2011, the Plaintiff filed Remedy ID # 649473-R2 at the Regional Office level. (Heard Decl. ¶9, Dkt.# 63-1 at 4; and Dkt.# 57-5 at 3). On December 23, 2011, the Regional Office rejected the submission as untimely and for exceeding the allotted number of continuation pages. (Dkt.# 57-35). Plaintiff was again advised that he could correct the technical deficiency and resubmit the appeal in

---

[17] As set forth in the Declaration of Deputy Regional Counsel Mellady, although an inmate does not normally receive a substantive response when an administrative remedy submission is rejected at the Regional level, this was a submission involving a correctable *technical deficiency;* thus, plaintiff was instructed that he could correct the errors and resubmit the remedy request in proper form within ten days, or by October 16, 2011. (Mellady Decl. ¶4, Dkt.# 57-19 at 2).

proper form within ten days of the date of the Rejection Notice, or by January 2, 2012. (Id.; Heard Decl. ¶9, Dkt.# 63-1 at 4; and Dkt.# 57-5 at 4). A review of the record reveals no evidence to show that the plaintiff properly re-filed this appeal to the Regional Office within the allotted ten days, or that any further appeals were filed by the plaintiff regarding this Administrative Remedy. (Heard Decl. ¶9, Dkt.# ).

It is apparent from the record that plaintiff failed to comply with the procedural requirements at both the Regional and Central Office levels, despite being given repeated opportunities to re-file his remedy requests in proper form, including specific advice on how to effectuate proper re-filing, so that his claims could be addressed on the merits. For whatever reason, plaintiff failed to comply, and consequently he has never fully exhausted his administrative remedies on any of his claims.[18]

Despite the fact that the Supreme Court has stated that it "will not read futility or other exceptions into statutory exhaustion requirements . . . ," see Booth v. Churner, 532 U.S. at 741, n. 6, several courts have found that the mandatory exhaustion requirement may be excused in certain limited circumstances. See Mitchell v. Horn, 318 F.3d 523, 529 (3rd Cir. 2003) (summary dismissal for failure to exhaust not appropriate where prisoner was denied forms necessary to complete administrative exhaustion); Ziemba v. Wezner, 366 F.3d 161 (2d Cir. 2004) (defendant may be estopped from asserting exhaustion as a defense, where the defendant's actions render the grievance procedure unavailable); Aceves v. Swanson, 75 Fed.Appx. 295, 296 (5th Cir. 2003) (remedies are effectively unavailable where prison officials refuse to give inmate grievance

---

[18] The record is replete with evidence to show that the notices returned to the plaintiff clearly outlined the steps necessary to aid him in properly re-submitting the requests. Moreover, the very notices which plaintiff alleges demonstrate the defendants' failure to address the merits of his claims clearly state that: "YOU MAY RESUBMIT YOUR APPEAL IN PROPER FORM WITHIN 10 DAYS OF THE DATE OF THIS REJECTION NOTICE." (Dkt.# 57-33; Dkt.# 57-34 and Dkt.# 57-35).

forms upon request); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(a remedy is not available within the meaning of § 1997e(a) when prison officials prevent a prisoner from utilizing such remedy); Dotson v. Allen, 2006 WL 2945967 (S.D.Ga. Oct. 13, 2006)(dismissal for failure to exhaust not appropriate where plaintiff argues that failure to exhaust was direct result of prison official's failure to provide him with the necessary appeal forms).

Here, the plaintiff has failed to set forth any accepted reason, let alone any reason at all, to excuse his failure to exhaust. Accordingly, these claims must be dismissed for failure to exhaust and as procedurally defaulted under Woodford v. Ngo, *supra*.

When a prisoner files a complaint without first exhausting administrative remedies, normally, dismissal without prejudice is appropriate. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004); see also Johnson v. Cannon, 2010 WL 936706, at *8 (D.S.C. Mar. 15, 2010)(unpublished), aff'd, 390 F. App'x 256 (4th Cir. 2010)(per curiam)(unpublished); Stokes v. Moore, No. 5:08-CT-2045-FL, slip op. At 4 (E.D.N.C. Jan. 26, 2010)(unpublished); Shouse v. Madison, 2010 WL 276543, at *1 (W.D. Va. Jan 19, 2010) (unpublished). Doing so allows the prisoner an opportunity to exhaust the administrative process and then file a new suit if the outcome of the administrative process is not favorable to the prisoner. Here, however, dismissal with prejudice is appropriate, because the plaintiff is now procedurally barred from raising his claims in the administrative remedy process. See 28 C.F.R. 542.14(a) (a prisoner has 20 calendar days following the date on which the incident occurred, to file a formal administrative remedy).

## VI. Recommendation

Based on the foregoing, the undersigned recommends that the defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment (Dkt.# 56) be **GRANTED** and plaintiff's Bivens complaint (Dkt.# 2) be **DENIED and DISMISSED with prejudice**.

**Within sixteen (16) days** of being served with a copy of this Recommendation, **or by December 27, 2012**, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: December 11, 2012

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE